IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No.  24-cv-4168 |
| | ) | |
| NATIONAL INTERSTATE INSURANCE | ) | |
| COMPANY, ILLINOIS CENTRAL SCHOOL | ) | |
| BUS LLC, and DIANE RAMIREZ- | ) | |
| CUAUTLE, Individually, and as Mother and | ) | |
| next of kin to JOHN DOE, a minor disabled | ) | |
| person, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Westfield Insurance Company, ("Westfield"), by its attorneys, Esp Kreuzer Cores

LLP, for its Complaint for Declaratory Judgment against Defendants National Interstate Insurance

Company, ("National Interstate"); Illinois Central School Bus LLC, ("ICSB"), and Diane Ramirez-

Cuautle, Individually, and as Mother and next of kin to John Doe, a minor disabled person,

("Ramirez-Cuautle"), states:

### I. THE PARTIES

1.      Westfield is an Ohio corporation, with its principal place of business in Westfield

Center, Ohio. At all times relevant herein, Westfield was authorized to issue policies of

insurance in the State of Illinois and issued a certain commercial general liability policy to its

named insured, ICSB.

2.      National Interstate is an Ohio corporation, with its principal place of business in

Richfield, Ohio. At all times relevant herein, National Interstate was authorized to issue policies

of insurance in the State of Illinois and issued a certain business auto liability policy to its named

insured, ICSB.

3.     ICSB is an Illinois limited liability company with its principal place of business located in Joliet, Illinois. North America Central School Bus Intermediate Holding Company LLC is the manager of ICSB. Steven Hemmerlein is the manager of North America Central School Bus Intermediate Holding Company LLC. On information and belief, Hemmerlein is a resident of Will County, Illinois.

4.     Ramirez-Cuautle is the plaintiff in the underlying lawsuit, 2024 LA 000278 (DuPage County, Illinois), and is a resident of West Chicago, DuPage County, Illinois.

## II.  JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, Westfield is a citizen of the State of Ohio. National Interstate is a citizen of the State of Ohio. Upon information and belief, ICSB is a citizen of the State of Illinois. Upon information and belief, Ramirez-Cuautle is a citizen of the State of Illinois.

6.     Venue of this action in the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391(a), (b), and (c), because the underlying lawsuit is pending in Cook County, Illinois.

## III. THE UNDERLYING LAWSUIT

7.     On April 3, 2024, ICSB caused to be sent to Westfield pages 1 through 9 and 11 through 13 of an underlying complaint that Ramirez-Cuautle filed, case number 2024 LA 000278 (DuPage County, Illinois). Westfield filed pages 1 through 9 and 11 through 13 of the underlying complaint as ECF No. 1-2.

8.     ICSB did not provide to Westfield page 10 of the underlying complaint that Ramirez-Cuautle filed, case number 2024 LA 000278 (DuPage County, Illinois). Westfield obtained a web copy of page 10 of the underlying complaint and filed the web copy of page 10 as ECF NO. 1-3.

9.      The underlying complaint, against multiple defendants, alleges that an incident happened on January 12, 2022 while Ramirez-Cuautle's disable (autistic) minor was using a school bus. ECF No. 1-2 at 2¶¶5, 9-12.

10.      The underlying complaint alleges ICSB, by and through its bus driver, was operating a school bus in transit from a school. ECF No. 1-2 at 2¶¶5, 9-12.

11.      The underlying complaint alleges that while Ramirez-Cuautle's disable (autistic) minor was using the school bus, the school bus driver knowingly and intentionally harassed, intimidated, and verbal abused Ramirez-Cuautle's disable (autistic) minor. ECF No. 1-2 at 3¶12, 6-7¶31(d), 8-9¶42(b), 12¶56(b), ECF 1-3 at 10¶¶48-50(b).

12.      The underlying complaint alleges that the bus driver was supposed to drop off Ramirez-Cuautle's disabled minor (autistic) directly at his home. ECF No. 1-2 at 2¶8.

13.      The underlying complaint alleges that Ramirez-Cuautle's disabled (autistic) minor begged and pleaded with the bus driver that he was only to be dropped off at his home.  ECF No. 1-2 at 3¶11.

14.      The underlying complaint alleges that the bus driver refused to listen to Plaintiff's disabled (autistic) minor. ECF No. 1-2 at 3¶12.

15.      The underlying complaint alleges that the bus driver intentionally and deliberately mocked and mimicked Ramirez-Cuautle's disabled (autistic) minor to the point that Ramirez-Cuautle's minor was visibly shaken and severely distressed. ECF No. 1-2 at 3¶12.

16.      The underlying complaint alleges that the bus driver then forced Ramirez-Cuautle's minor to exit the bus stop in the street. ECF No. 1-2 at 3¶12.

17.      The underlying complaint alleges that the bus driver forced Ramirez-Cuautle's minor, against the disabled (autistic) minor's will  to leave the bus at a bus stop that he was not familiar with; approximately seventeen (17) blocks away from his home; when it was already dark outside; in the dead of winter; without any cell phone; on the opposition side of a set of dangerous train tracks; and that

3

Ramirez-Cuautle's disabled (autistic) minor was forced to encounter other dangerous circumstances. ECF No. 1-2 at 2-3¶9-12, 6-7¶31(c), 8-9¶42(a), 11-12¶56(a), ECF 1-3 at 10¶50(a).

18.     The underlying complaint alleges that prior to Ramirez-Cuautle contacting the police to report a missing person, Ramirez-Cuautle's disabled (autistic) minor was left to wander the street. ECF No. 1-2 at 3¶13, 4¶¶17-18, 5¶20.

19.     The underlying complaint alleges that Ramirez-Cuautle's disabled (autistic) minor suffered severe emotional distress and infliction of physical abuse in the form of leaving the minor in the cold with no means to avoid dangerously frigid conditions, as a result of the actions and inactions of Defendants. ECF No. 1-2 at 3¶14, 5¶21, 7¶33, 9¶9, 11¶51, 12¶57.

20.     The underlying complaint alleges that ICSB owed a duty to supervise its bus driver to ensure that the bus driver did not knowingly and intentionally place Ramirez-Cuautle's disabled (autistic) minor in harm. The underlying complaint alleges that ICSB knew or should have known that its bus driver had a particular unfitness for his position so as to create a danger to Ramirez-Cuautle's minor. ECF No. 1-2 at 11¶54.

21.     The underlying complaint alleges that ICSB knew or should have known of Ramirez-Cuautle's minor's autism and the unreasonable risks posed by forcing Ramirez-Cuautle's minor to exit the bus at a location that Ramirez-Cuautle's minor was not familiar with. ECF No. 1-2 at 4¶17.

22.     The underlying complaint alleges that ICSB knew or should have known of Ramirez-Cuautle's minor's autism and the unreasonable risks posed by forcing Ramirez-Cuautle's minor to exit the bus at a location other than directly at his home. ECF No. 1-2 at 4¶18.

23.     The underlying complaint further alleges that ICSB, by and through its agents and employees: a) failed to protect Ramirez-Cuautle's minor from the reasonably foreseeable threat posed to him of being forced off the bus against his will far away from his home in a strange and unknown area; b) failed to protect Ramirez-Cuautle's disabled (autistic) minor from harassment, intimidation, and verbal abuse; c) failed to protect Ramirez-Cuautle's minor by failing to supervise the actions and training of its bus driver on January 12, 2022; d) failed to protect Ramirez-Cuautle's disabled (autistic) minor by failure

to ensure that its employees and drivers were adequately training to address the needs of students with disabilities. ECF No. 1-2 at 8¶41, 9¶42(a), 12¶56(a).

24.     The underlying complaint alleges that ICSB's acts and omissions were done willfully and wantonly; with utter disregard for the risk of harm imposed on Ramirez-Cuautle's disabled (autistic) minor; with indifference and/or with conscious disregard for the safety and well-being of Ramirez-Cuautle's disabled (autistic) minor.  ECF No. 1-2 at 5¶22, 10-11¶50, ECF 1-3 at 10-11¶50.

### IV. NOTICE OF THE UNDERLYING ACCIDENT AND LAWSUIT

25.     It was on April 3, 2024, that Westfield fire received notice of the January 12, 2022 incident.

26.     It was on April 3, 2024, that Westfield fire received notice of the underlying lawsuit, case number 2024 LA 000278 (DuPage County, Illinois).

### V. THE NATIONAL INTERSTATE BUSINESS AUTO LIABILITY POLICY

27.     National Interstate issued a business auto liability policy, policy number CAR 0352164 04, effective on June 30, 2021 to June 30, 2022 with limits of $5,000,000 each accident, that identifies ICSB as a named insured. Westfield filed an affidavit as ECF No. 1-4 stating that Westfield does not have a copy of the business auto liability policy that National Interstate issued.

28.     On or before May 8, 2024, National Interstate retained Amundsen Davis to file an appearance in the underlying lawsuit as attorneys for ICSB.

### VI. THE BEASLEY INSURANCE ABUSE AND MOLESTATION LIABILITY POLICY

29.     Beasley Insurance issued an abuse and molestation liability policy, effective on January 12, 2022 that identifies ICSB as a named insured. Westfield filed an affidavit as ECF No. 1-4 stating that Westfield does not have a copy of the abuse and molestation policy that Beasley Insurance issued.

VII. THE WESTFIELD COMMERCIAL PACKAGE POLICY

30.     Westfield Insurance issued a commercial package policy to North America Central School Bus, policy number TRA 5 184 146, effective June 30, 2021 to June 30, 2022. Westfield filed a copy of the commercial package policy as ECF No. 1-5.

31.     ICSB is identified by name on the schedule of named insureds. ECF No. 1-5 at 6.

32.     The commercial package policy includes commercial general liability ("CGL") declarations. ECF No. 1-5 at 214.

33.     The Insuring Agreement of "Coverage A – Bodily Injury and Property Damage Liability" of the Commercial General Liability Form provides in part:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. * * *
>
> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.  Insuring Agreement**
>
> > **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" of "property damage" to which this insurance does not apply. ***

ECF No. 1-5 at 223.

34.     Section II, titled "Who Is An Insured," reads in part:

> **1.** If you are designated in the Declarations as: * * *
>
> c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to

their duties as your managers. * * *

ECF No. 1-5 at 231.

35.     Section II, titled "Who Is An Insured," further reads in part:

> **2.** Each of the following is also an insured:
> **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company)

ECF No. 1-5 at 231.

36.     The CGL contains endorsement CG 21 46 07 98, stating that:

> This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of:
> 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
> 2. The negligent:
>    a. Employment;
>    b. Investigation;
>    c. Supervision;
>    d. Reporting to the proper authorities, or failure to so report; or
>    e. Retention;
>    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

ECF No. 1-5 at 217.

37.     "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the CGL reads in part:

> **2.  Exclusions**
>
> This insurance does not apply to:
>
> **a.  Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not

7

apply to "bodily injury" or "property damage" resulting from the use of reasonable force for the purpose of protecting persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reasons of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract;" and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*       \*       \*

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the

"bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured. * * *

ECF No. 1-5 at 224-226.

38.     "Coverage B – Personal and Advertising Injury Liability" of Section I of the CGL

reads in part:

**1.   Insuring Agreement**

**a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . .

**b.**   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

ECF No. 1-5 at 228.

39.     Section IV of the CGL reads in part:

**2.   Duties In The Event Of Occurrence, Offense, Claim or Suit**

**a.**   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include: (1) How, when and where the 'occurrence' or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising out of the 'occurrence' or offense.

**b.**   If a claim is made or "suit" is brought against any insured, you must:

**(1)**   Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent, or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work;"

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos," or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or products and completed operations for which you have been added as an additional insured.

\*     \*     \*

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

ECF No. 1-5 at 234.

40.     Section V of the CGL reads in part:

**SECTION V – DEFINITIONS**

\*     \*     \*

**2.** "Auto" means: **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*     \*     \*

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\*     \*     \*

9. "Insured contract" means:

\*     \*     \*

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\*     \*     \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.   "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication of material that violates a person's rights of privacy;

      **f.** The use of another's advertising idea in your "advertisement"; or

      **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

ECF No. 1-5 at 235-237.

## VI. BASIS FOR RELIEF

41. Westfield owes no duty to defend or indemnify ICSB against the *Ramirez-Cuautle* lawsuit, case number 2024 LA 000278 (DuPage County, Illinois), for one or more of the following reasons:

    a) The business auto liability policy that National Interstate issued was intended to provided coverage against the risk that ICSB would be held liable in tort for causing bodily injury arising out of the ownership, maintenance, use or entrustment to others of the school bus;

    b) The commercial general liability policy was not intended to provide coverage against the risk that the named insured would be held liable in tort for causing bodily injury arising out of the ownership, maintenance, use or entrustment to others of the school bus;

    c) A child attempting to gain entry to a school bus is "using" the school bus;

    d) A child attempting to remain on a school bus by begging not to be forced off of the school bus against his work is "using" the school bus;

    e) A child exiting a school bus is "using" the school bus;

    f) But for Ramirez-Cuautle's disabled (autistic) minor's use of the school bus, Ramirez-Cuautle's disabled (autistic) minor would not have sustained any injury;

13

g) Because the incident arose out of Ramirez-Cuautle's disabled (autistic) minor's use of the school bus, no factual basis exists to establish coverage under the Westfield CGL;

h) Because the incident arose out of the bus driver's use of a motor vehicle or ICSB's entrustment to its bus driver of a motor vehicle, a factual basis exists to establish coverage under the auto liability policy that National Interstate issued;

i) Because the incident arose out of the bus driver's use of a motor vehicle or ICSB's entrustment to its bus driver of a motor vehicle, no factual basis exists to trigger coverage under the Westfield CGL;

j) Because insurance only transfers risks associated with "fortuitous occurrences," generally no coverage will exist for a loss that is not accidental;

k) Because the allegations against ICSB are for the wrongful acts of the bus driver, the conduct neither constitutes an "accident" nor an "occurrence;"

l) The claims against ICSB are related and interdependent with the bus driver's alleged wrongful misconduct;

m) The allegations in the underlying complaint of negligent supervision, training, and retention are nothing more than rephrasings of the fact that the plaintiff's disabled (autistic) minor's injury arose from the use or operation of the school bus along with the bus driver's wrongful misconduct;

n) Emotional distress is not bodily injury, as the CGL uses that term, therefore, no factual basis exists to trigger coverage under the Westfield CGL;

o)  Without prejudice to the foregoing positions, exclusion a. reinforces the proposition that the general liability policy was not intended to insure against the risk of "bodily injury" liability that was "expected or intended" by the insured;

p)  Without prejudice to the foregoing positions, because the underlying complaint alleges that the bus driver's intentional conduct is imputed to ICSB, exclusion a. excludes coverage for ICSB;

q)  Without prejudice to the foregoing positions, the "Abuse or Molestation Exclusion" reinforces the proposition that the general liability policy was not intended to insure against the risk of "bodily injury" liability arising out of the actual or threatened abuse by the bus driver of a passenger while in the care, custody or control over any insured.

r)  The "Abuse or Molestation Exclusion" bars claims for negligent employment; investigation, supervision; reporting; or retention;

s)  Without prejudice to the foregoing positions, exclusion g. of the commercial general liability coverage form, reinforces the proposition that commercial general liability policy was not intended to provide coverage against the risk that the insured will be held liable in tort for causing bodily injury arising out of the ownership, maintenance, use or entrustment to others of a motor vehicle;

t)  The underlying complaint does not set forth allegations against ICSB constituting any of the offenses set forth in the definition of "personal and advertising injury," therefore, there is no duty to defend;

u) Without prejudice to the foregoing positions, if ICSB knew of an accident, but failed to provide timely notice to Westfield, then ICSB cannot establish a condition precedent to coverage;

v) Without prejudice to the foregoing positions, even if hypothetically ICSB could establish a factual basis to trigger a duty to defend, because other insurance exists, Condition 4 of the CGL would apply to limit ICSB's obligation; and

w) There may be other bases for denying coverage and Westfield reserves the right to plead them in the future.

42.    An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

WHEREFORE, Plaintiff, Westfield Insurance Company prays for a judgment declaring that Westfield Insurance Company owes no duty to defend or indemnify Illinois Central School Bus LLC, against the *Ramirez-Cuautle* lawsuit, case number 2024 LA 000278 (DuPage County, Illinois), for costs of filing suit, and for such further relief that is just under the circumstances.

ESP KREUZER CORES LLP
400 S. County Farm Road, Suite 200
Wheaton, Illinois 60187
(630) 871-1002; ARDC #6274517; our file 1.10709K
jbarger@ekclawfirm.com

RESPECTFULLY SUBMITTED,

_____
Jeffrey S. Barger